UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                              Case No. 11-cr-63-pp

STANLEY MENZIE,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 3582(C)(1)(A) (DKT. NO. 344)**

On January 25, 2012, Judge Charles N. Clevert, Jr. sentenced the defendant to 168 months in custody after he pled guilty to conspiring with others to possess with intent to distribute in excess of 280 grams of crack. Dkt. Nos. 158, 161.

Over eight years later, on April 17, 2020, the court received the defendant's motion for a reduction of his sentence under 18 U.S.C. §3582(c)(1)(A). Dkt. No. 344. The motion explains that the defendant has been in custody since April 2010—ten years. Id. at 1. His scheduled release date is October 24, 2022, thirty months from now. Id. He says that he has completed the 500-hour Residential Drug Abuse Program while in custody, as well as any other programming available to him. Id. The motion also explains that the defendant has several children who have grown up without him, including twenty-two-year-old twins with severe disabilities that make them completely dependent on others. Id. at 1-2. The defendant says that "[i]f given 12 months

1

home-confinement the maximum allowed on October 24, 2021," his "regular current sentence would not be affected." Id. at 2. He says that "[b]eing allowed to have [his] sentence amended at this time or by October 24, 2020 would only reduce [his] incarceration by only 12 months which is not a significant margin." Id.

The defendant also indicates that all five of his co-defendants are out of prison—some have been out for several years—which he argues shows that he received a disparate sentence. Id. He explains that if the court amended his sentence and he was allowed home confinement for the maximum twelve months, he would have a stable residence to go to and a safe way to get there, and says that reducing his sentence would allow him to provide relief for his wife and others his children have been relying on while he has been away. Id.

The court also received from the defendant a personal letter, pleading with the court to consider his motion. Dkt. No. 345. It is a powerful letter, explaining the defendant's journey from troubled young man, deeply involved in the drug-dealer lifestyle and the life of the streets to his realization in federal prison that that lifestyle had damaged him and his seven children, who have grown up without him. Id. at 1-2. The defendant describes what he has done to make himself a better person for those children, working at a metal fabrication plant, obtaining a production technician certificate, taking numerous courses and again, completing the RDAP program. Id. at 2-3. He says that now, with the eruption of the COVID-19 crisis, it is more important than ever for him to be there for his children and his family, and he emphasizes that he has no

intention of being involved in any kind of criminal activity. Id. at 3. He asks the court to give him an opportunity to go out into the community and be a responsible, law-abiding citizen and provide for his family. Id.

Probation reports that the defendant has had only three violations while in custody—a 2016 violation for failing to stand for count (he fell asleep), a 2017 possession drugs/alcohol violation and another violation in 2017 for using another inmate's phone account. Dkt. No. 348 at 3. He has paid his $100 special assessment, and currently is working as an orderly. Id. at 2. In addition to the RDAP program, he's completed programs in legal research, investment, parenting, welding, first aid, HVAC, math and many others. He currently is studying quantum physics, safety and housekeeping. Id. at 3. The defendant has used his time in custody very well; it appears that he has consistently worked toward improving himself, just as he told the court in his letter. The court is impressed with the defendant's efforts and applauds him for deciding to make the most of very difficult circumstances.

The court, however, does not have the authority to do what the defendant is asking the court to do. The law—specifically, 18 U.S.C. §3582(c)—prohibits a federal judge from modifying a sentence once it has been imposed, with only certain exceptions. A federal judge cannot, a year or two years or ten years down the line, just decide to reduce a sentence because that a sentence was unfair or too harsh. There is an exception; it appears that the defendant is referencing this exception in his motion. Section 3582(c)(1) allows a court to reduce a sentence, after considering the sentencing factors in 18 U.S.C.

§3553(a), if the court finds that there are "extraordinary and compelling reasons" that "warrant such a reduction," or if the defendant is at least seventy years old, has served at least thirty years in prison and has been determined by the director of the Bureau of Prisons not to be a danger to the community.

The defendant does not qualify for the second kind of reduction—he isn't over seventy years old and he hasn't served at least thirty years of his sentence. So the only way that he could qualify for a sentence reduction under 18 U.S.C. §3582(c)(1)(A) is if the court finds that there are "extraordinary and compelling circumstances" that warrant such a reduction. But before the court can consider whether such circumstances exist, there is a step the defendant must take. The statute says that the court may reduce a defendant's sentence for extraordinary or compelling circumstances *only* "upon motion of the Director of the Bureau of Prisons"—that is, if the *BOP director* files the motion—or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."

What does that mean? It means that the defendant first must ask the *BOP* for the reduction. This court cannot consider the defendant's request for a §3582(c)(1)(A) reduction unless he shows that he asked the BOP first. The statute contemplates that three things might happen after a defendant asks the BOP for a sentence reduction under §3582(c)(1)(A). First, the BOP—either through the warden, the BOP's General Counsel, the medical director, the

4

Correctional Programs Division or through the BOP Director himself—might agree with the defendant that he deserves the sentence reduction. If that happens, the BOP itself will file a motion asking the court to grant the defendant a reduction, and the court may consider that motion. Second, the warden might disagree with the defendant. If that happens, the statute requires the defendant to "fully exhaust all administrative rights to appeal." In other words, he must appeal the BOP's denial of his request through the BOP Administrative Remedy Procedure, which is laid out in 28 C.F.R. Part 542, subpart B and Program Statement 5050.50 (https://www.bop.gov/policy/progstat/5050_050_EN.pdf). Once the defendant exhausts all the remedies available to him under that administrative remedy procedure, then *he* may file a motion asking the court for the reduction, and the court may consider that motion.

Third, the statute contemplates that a defendant might ask the warden for a sentence reduction and the warden might do nothing. If that happens, the defendant may file the motion himself if he can demonstrate that thirty days have passed between the date he asked the warden for the sentence reduction and the day he filed the motion with the court. If the court is satisfied that the defendant filed his motion with the warden and that the warden didn't take any action for thirty days or more, the court may consider the motion.

The BOP has not filed a sentence reduction motion on the defendant's behalf. So in order for the court to consider the defendant's motion, the defendant must show either that he made a request to the warden which was

5

Case 2:11-cr-00063-PP   Filed 04/27/20   Page 5 of 9   Document 350

denied and that he has exhausted all his appellate remedies under the administrative remedies procedure, *or* that he asked the warden but the warden did nothing for thirty days or more. The defendant has not provided the court with proof that either of those things has happened. Without that proof, the court does not have the authority to consider his motion.

The government argues that even if the defendant had shown the court that either he'd exhausted his remedies to appeal a denial of his request by the warden or that he'd made the request but that the warden had failed to act, the court still should not grant the defendant's motion because he has not shown "extraordinary and compelling reasons" why the court should grant a reduction—such as terminal illness, a serious physical or medical condition, severe functional or cognitive impairment or deteriorating health due to age that make it hard for him to care for himself in custody and from which he is not likely to recover. Dkt. No. 349 at 10. The government concedes that other circumstances could constitute "extraordinary and compelling reasons" for a sentence reduction, id., but it argues that the defendant has not identified how the COVID-19 crisis presents a specific extraordinary and compelling reason for a reduction as it relates to him, id. at 22-25. The government emphasizes that as of April 23, 2020, FCI Oxford (where the defendant is housed) had no confirmed cases of COVID-19 among inmates or staff. Id. at 2. It lays out in detail the measures the BOP has implemented to try to detect the virus and to prevent its spread, and points to the fact that on March 26, the Attorney General expanded the BOP's authority to place inmates on home confinement.

6

Id. at 2-8. Probation notes this as well, explaining that "in light of COVID-19, the Bureau of Prisons is reviewing cases for potential early release to home confinement, giving priority to inmates with COVID-19 specific risk factors." Dkt. No. 348 at 2.

The court does not have the authority to decide whether the defendant has demonstrated extraordinary and compelling circumstances, but the government is correct that the defendant has not shown that *he* is at greater risk than other inmates to contract the virus, or to suffer a more severe reaction to it. The court does not mean to minimize the defendant's situation; it knows from the motions and letters it has received in the last month that inmates all over the country are terrified. They are confined in small, restricted spaces where it is hard, if not impossible, to practice social distancing. They may not be able to practice the kind of rigorous hygiene that public health authorities are advising—wearing masks, washing their hands with anti-bacterial soap frequently for at least twenty seconds, washing frequently-touched surfaces with powerful disinfectants. But this is true of every inmate in a jail or prison, and even more true for inmates in facilities where there are confirmed cases of the virus among inmates or staff. If concern about COVID exposure constituted an extraordinary and compelling reason for a sentence reduction, every prisoner in the country would get one.

The government also notes that the defendant has indicated that he wants the reduction because he is worried about his children, particularly his disabled twins and the impact the virus may have on them and on their

7

caregivers. Dkt. No. 349 at 25. Like the government, the court commends the defendant on his love and concern for his family. Not being able to help them, or see them, in this terrible time only adds to the defendant's stress and fear. The court will not comment on whether that concern would constitute an extraordinary and compelling reason for a sentence reduction. If the defendant follows the procedure laid out in §3582(c)(1) and the court later finds itself with the authority to consider a sentence reduction motion, the court will address that question then.

Finally, to the extent that the defendant meant to ask this court to order the BOP to place him on home confinement, the government correctly points out that the court does not have that authority. The BOP has the statutory authority to place someone on home confinement, and to decide when to do so. 18 U.S.C. §3624(c). See also, *e.g.*, United States v. Neeley, Case No. 14-cr-96, 2020 WL 1956126, at *2 (S.D. Ind. April 23, 2020).

The court cannot grant the defendant's motion for a sentence reduction because he hasn't demonstrated that he made his request to the BOP first, or that he exhausted his remedies if the BOP denied his request, or that the warden failed to act on his request within thirty days. The court can't grant the defendant's request to be placed on home confinement at all. But the court acknowledges all the good things the defendant has done while he is in custody. He is doing things that ought to make his family proud of him, and that will serve him well when he is released. The court encourages the defendant to stay that course.

The court **DENIES WITHOUT PREJUDICE** the defendant's motion for a reduction of sentence. Dkt. No. 344.

Dated in Milwaukee, Wisconsin this 27th day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**